UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

                                  Case No. 05-CR-80180

v.

                                  HONORABLE DENISE PAGE HOOD

STEFFEN ETCHISON,

      Defendant.

_____/

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S MOTIONS TO SUPPRESS EVIDENCE AND SUPPRESS STATEMENT

### I.      INTRODUCTION

This matter is before the Court on Defendant's Motion to Suppress Statement, filed on May 18, 2005 and Defendant's Motion to Suppress Evidence, filed July 6, 2005.  The Government filed its respective Responses on June 6, 2005 and July 21, 2005.  A hearing was held on October 27, 2005.

### II.     STATEMENT OF FACTS

On October 15, 2004, City of Jackson Police Officers Martin Jordon, Elmer Hitt, and Sergeant Rich Cook entered the home of Major Overall at 1214 South Jackson Street, in the City of Jackson.  Officer Jordon had received a "tip" that guns and drugs were being stored at this address.  Officer Jordon had had contact with Heather Moorhead who claimed her purse had been stolen by her sister Autumn and a friend Deborah Farmer and that 1214 South Jackson Street was

1

a place the two women frequented.  Officer Jordon proceeded to that address.  Officer Hitt and Sergeant Cook came to the address in separate cars.  The police officers were in full uniform and were driving marked scout cars.  Officer Jordon went to the back of the 1214 South Jackson Street, went up the stairs to the upper flat where the door was answered by the resident, Major Overall. Officer Jordon had previously met Major Overall at a body shop in town and knew that Mr. Overall and his son lived there.  Officer Jordon explained why he was there and asked permission to search the premises.  Mr. Overall agreed to the search.  Officer Jordon then radioed Officer Hitt and Sergeant Cook, who joined him in entering the premises.  Officer Jordon did not present Mr. Overall with the Consent to Search form used by the Jackson Police Department; instead, he used a witness statement form to memorialize Mr. Overall's consent.

Inside, the officers entered a kitchen which led to a hallway which in turn led to a living room, bedroom and bathroom.  The officers testified that the flat was dirty and in disarray.  In the living room they found two women, Autumn Moorhead and Deborah Farmer and Mr. Overall's son. The two women claimed to have no knowledge of the stolen purse.  Officer Jordon opened a door leading to a closet in the living room.  Upon opening the door he found a man inside, Defendant Steffen Etchison and the stolen purse.  Autumn Moorhead then stated that she had taken the purse because it contained her medication.  Here some of the facts become disputed.

Defendant Etchison claims he was asked why he was in the closet and that he told the officer he was hiding because he believed that he had outstanding warrants.  Defendant Etchison then claims he was told to be seated in the living room.  Officer Jordon testified that Defendant Etchison began questioning why the officers were searching. Defendant Etchison testified that he asked what they were searching for and that there were things there that belonged to him.  Officer Jordon

2

testified that he told Defendant Etchison that the officers had consent to search.  Officer Jordon continued searching accompanied by Mr. Overall while Officer Hitt stayed with the persons present in the home, including Defendant Etchison.

In the course of the search, Officer Jordon came upon a bag with some shoes on top of it in the hallway.  The bag was a tall, heavy, plaid, plastic carrying bag with a rectangular bottom and top and white trim, with handles sewn on the sides and a zippered top.  Officer Jordon said there were some gym shoes on top of it which he removed and then noticed the bag had clothes in it and a tear on the side near the bottom of the bag.  He claims he lifted the bag up two times and let it drop to the ground hearing it "clank."  He then rummaged in the bag through the tear and discovered a handgun.

Officer Jordon claims that the bag was not zipped and was torn at the top and open.  It is undisputed that there was a large white Greyhound Bus checked luggage tag tied on the bag.  (The Court notes the tag is about the size of a large index card).  Officer Jordon claims he did not see this tag before going in the bag, despite lifting and dropping the bag, because the tag was on the side of the bag abutting the wall.  The luggage tag had Mr. Etchison's name on it as well as other Greyhound Bus information.  Officer Jordon testified that he did not see the tag before he looked in the bag even though his police report indicates otherwise.  Although the Government argues that the bag may have been mistaken for trash, based on the untidy condition of the dwelling, there is no evidence that Officer Jordon mistook the bag for trash nor does the bag appear to be a trash-like container.

Defendant Etchison testified that he kept the bag in the hallway because he slept in the living room.  His testimony was that he lived between Mr. Overall's flat and his grandmother's home.

Defendant Etchison testified that he had spent the night before at Mr. Overall's flat.  Defendant Etchison testified that he had two bags like the one seized, one at Mr. Overall's flat with clothes and papers in it, and one at his grandmother's home with clothes and toiletries in it.  When asked why he did not keep the bag in the bedroom he stated that Mr. Overall's sons slept in the bedroom and that the bedroom was full of clothes and dog leavings.  He stated he thought the young men would go through the bag if left in the bedroom.  Defendant Etchison testified that he did not keep the bag in the living room because a lot of people came in and out of the living room and he thought the bag was safer in the hallway.  He stated no one was permitted to go through the bag.  Defendant Etchison also stated that when the bag was not zipped he tied the handles across the top of the bag to close it.  He demonstrated closing the bag in this fashion, indicating that when the handles were tied, the Greyhound luggage tag is in plan view at the top of the bag.  When Defendant Etchison had last seen the bag it was closed, either zipped or tied, he could not recall.  Defendant Etchison never consented to the search of his bag.

After finding the gun, Officer Jordon notified the other officers he had found a gun and asked Mr. Overall about the gun.  Mr. Overall indicated the gun was not his and said that he did not know whose gun it was but, upon further questioning, Mr. Overall stated it was Defendant Etchison's gun.  Officer Jordon also asked the two women about the gun.  Neither they nor Mr. Overall's son, David Overall (whose shoes were on top of Defendant Etchison's bag), knew anything about the gun.

Following the seizure of the gun and notification that Mr. Overall had previously stated it was Defendant Etchison's gun, Officer Hitt testified he asked Defendant Etchison to go into the bedroom where he intended to ask Defendant Etchison some questions.  Officer Hitt testified that he asked Defendant Etchison into the bedroom where they could have some privacy.  Once in the

4

bedroom, Officer Hitt closed the door and stood between Defendant Etchison and the door. It was Defendant Etchison's testimony that he had no choice but to follow Officer Hitt into the bedroom. Defendant Etchison noted that he was concerned because he believed Mr. Overall had gone outside the flat. Defendant Etchison also testified that Officer Hitt had his hand on his gun as they were walking in the hallway.

Once in the bedroom Officer Hitt began to question Defendant Etchison. It is undisputed that no *Miranda* rights were read or given to Defendant Etchison before Officer Hitt began his questioning.

Officer Hitt testified that he knew Defendant Etchison from a previous contact and had recognized him while he was standing in the closet. It is undisputed that Officer Hitt and Defendant Etchison had previously had an altercation. Prior to October 15, 2004, Officer Hitt had lived in a Jackson neighborhood and was assigned to bike patrol. While on patrol, he observed Defendant Etchison in a car with some marihuana. Defendant Etchison got out of the car and when Officer Hitt attempted to apprehend him, Defendant Etchison struggled with him, hit and bit Officer Hitt and fled to a nearby home. Defendant Etchison was later apprehended. Officer Hitt, while testifying, did not remember being bitten by Defendant Etchison or that his hand was injured, but admitted that the incident was well known in the Jackson community. Defendant Etchison testified that he had been resisting arrest during his previous altercation with Officer Hitt.

On cross examination relative to impeaching Defendant Etchison's credibility, the Government questioned Defendant Etchison about his criminal history. Defendant Etchison testified that he was convicted of: the two felonies of escape and resisting arrest/obstructing justice; the misdemeanor of disguising/use of a false identity; and 1999 charges of the unauthorized use of a car

5

and a firearm charge.

In the bedroom on October 15, 2004, Officer Hitt asked Defendant Etchison about the gun. Defendant Etchison initially denied knowing anything about the gun, but in the course of the questioning acknowledged handling the gun and indicated he was "holding it for someone." Before Defendant Etchison admitted he had handled the gun, Officer Hitt had told him there was testing that would show who had handled the gun. Officer Hitt testified that he had not said it was DNA testing, but had indicated that there were skin cell tests that would indicate who had handled the gun. When pressed during the hearing, Officer Hitt acknowledged that skin cell tests could be reasonably inferred to be DNA tests. Officer Hitt also testified that, during the questioning, he told Defendant Etchison that he was not under arrest nor would he be arrested that day. This information was not included in Officer Hitt's report of the incident nor in any supplemental report. Officer Hitt never mentioned his statement about arrest until he met with the Government's attorney a few weeks before the evidentiary hearing. Officer Hitt agreed that it was an important fact that should have been included in his report.

Defendant Etchison gave a somewhat different version of the questioning. Defendant Etchison testified that Officer Hitt said that if Defendant Etchison did not tell him whose gun it was it would "haunt" Defendant Etchison and that he was going to "get down" on Defendant Etchison. Defendant Etchison stated that he thought Officer Hitt was going to "get down" on him. Defendant Etchison told Officer Hitt that it was his bag but he did not know where the gun came from. Defendant Etchison was not arrested at that time.

Special Agent Brian Beardsley also testified at the evidentiary hearing. He stated that he had interviewed the Greyhound bus agent, Deborah Taylor. She indicated that she had marked the word

6

"Damage" on Defendant Etchison's bag.  Special Agent Beardsley also testified to the chain of custody of the bag and that it had not been altered or changed since it had been taken from the Jackson police department.  His testimony was in response to Defendant Etchison's claims that the top of the bag was not damaged the last time he had seen it and that he believed the police had written the word "Damage" on the bag.

## III.   APPLICABLE LAW & ANALYSIS

### A.   The Exclusionary Rule

The Exclusionary Rule provides that evidence obtained through violations of the Fourth and Fifth Amendments may not be introduced by the government at trial to prove the guilt of the defendant.  *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Bram v. United States*, 168 U.S. 532, 548 (1897).  The Exclusionary Rule is a judicially created remedy to deter Constitutional violations.  *United States v. Leon*, 468 U.S. 897, 906 (1984).  A defendant may challenge the admission of evidence, based on the Exclusionary Rule, only if the defendant's own constitutional rights were violated.  *United States v. Salvucci*, 448 U.S. 83, 86-87 (1980).  In cases where the defendant is asserting Fourth Amendment violations, the court must determine whether the defendant had a subjective and reasonable expectation of privacy in the area searched or the items seized.  *Minnesota v. Carter*, 525 U.S. 83, 91 (1998).

### B.   Suppression of the Gun

Under the Fourth Amendment, all searches and seizures by government agents must be reasonable.  U.S. Const. Amend. 4.  Generally, searches and seizures must be made pursuant to a valid search warrant.  *Katz v. United States*, 389 U.S. 347, 357 (1967).  There are certain exceptions to this general assertion, including consent to search.  *Schneckloth v. Bustamonte*, 412 U.S. 218, 219

(1973).  Generally, any person who has a reasonable expectation of privacy and common authority over the place or items being searched can give consent.  *United States v. Matlock*, 415 U.S. 164, 171 (1974).

### 1.    Expectation of Privacy

Before determining the scope of a third party consent, the court must determine whether the defendant had a reasonable expectation of privacy in the items seized. *United States v. Gillis*, 358 F.3d 386, 391 (6th Cir. 2004).  The Sixth Circuit has held:

> In determining whether an individual has a legitimate expectation of privacy in a particular area searched, this court considers (1) whether the defendant exhibited an actual subjective expectation of privacy, and (2) whether the defendant's subjective expectation of privacy is 'one that society is prepared to recognize as reasonable.

*Id*, see also *Katz*, 389 U.S. at 361.  Whether a legitimate expectation of privacy existed is determined on a case-by-case basis.  *United States v. Waller*, 2005 WL 2708784, *3 (6th Cir. Oct. 24, 2005). In making such a determination, the court considers:

> [T]he person's proprietary or possessory interest in the place to be searched or item to be seized; whether the defendant has the right to exclude others from the place in question; whether he had taken normal precautions to maintain his privacy; whether he has exhibited a subjective expectation that the area would remain free from governmental intrusion; and whether he was legitimately on the premises.

*Id*. (Internal quotations omitted).  In examining the circumstances in *Waller*, the Court relied on *United States v. Salinas-Cano*, 959 F.2d 861 (10th Cir. 1992) as authority.  *Id*.  In *Salinas-Cano*, the Tenth Circuit Court of Appeals noted several factors to consider when determining the validity of a third party consent to search a suitcase.  *Id*. at 864.  The court examined:

> (1) the type of container, because certain container types historically command a high degree of privacy; (2) whether the owner took any precautions to manifest his subjective expectation of privacy; (3) whether the host of the premises initiated police involvement (e.g., officers invited to search an item during a response to a domestic violence report); and (4) whether the consenting party displayed a lack of

8

interest in the item (e.g., disclaiming ownership).

*Waller*, at 7, citing *Salinas-Cano*, 959 F.2d at 864.  (Internal quotations omitted).  The *Waller*
court further held:

> The expectation of privacy in one's luggage is not lessened by storing it on the
> premises of a third-party.  Rather, the expectations may well be at their most intense
> when such effects are deposited temporarily or kept semi-permanently... in places
> under the general control of another.  Waller's transient state only enhances his
> expectation of privacy in his luggage.  Indeed, to the sojourner in our midst, all of
> us at one time or another, the suitcase or trunk may well constitute practically the
> sole repository of such expectations of privacy as are had.

*Id*. (Internal quotations and citations omitted).  The *Waller* court held that the defendant had an
expectation of privacy in his luggage bag, partially based on the defendant's transient state.

The Court finds that Defendant Etchison had a subjective expectation of privacy in his bag.
Defendant Etchison had a possessory interest in the bag searched, as the bag belonged to him and
it contained his clothing and other personal effects.  Defendant Etchison also had the right to exclude
others from looking in the bag; took normal precautions to ensure his privacy by tying or zipping
the bag; exhibited a subjective expectation that the area would be free from governmental intrusion
by questioning the validity of the police officers' search; and was legitimately on the premises as
a guest of Mr. Overall.  In *Waller*, the Sixth Circuit Court of Appeals held that the defendant, who
kept a luggage bag at the house he was staying, had a expectation of privacy where the defendant
sought to preserve the contents as private; he did not inform the other residents of the apartment
what was in the bag; he did not give the other residents the authority to look inside the bag; the other
residents did not look inside the bag because they believed it contained the defendant's personal
effects; and the defendant left the bag zipped, closed and stored in a bedroom closet.  *Waller*, at 4.
Like the defendant in *Waller*,  Defendant Etchison sought to preserve the contents of his bag as

private; he did not inform the other residents of 1214 South Jackson of the contents of the bag; he did not give the other residents permission to look in the bag; and Defendant Etchison testified that he always kept the bag closed, either tied or zipped.  Defendant Etchison further testified that he kept the bag in the hallway because several people came in the living room and he thought the bag was safer in the hallway; the children slept in the bedroom and he was afraid that they would go through the bag; and the bedroom was filled with clothing and dog feces.

Applying the factors identified in *Salinas-Cano*, the Court finds: (1) while Defendant Etchison's bag was not a piece of luggage in the traditional sense, the bag was of the type often carried by persons as luggage; (2) Defendant Etchison took precautions to manifest his expectation of privacy by placing the bag away from the other residents and tying or zipping the bag; (3) Mr. Overall did not initiate police involvement, the police were acting on a tip they received and asked for Mr. Overall's consent to search the premises; and (4) Defendant Etchison did not express a lack of interest in his bag; in fact, he questioned the validity of the police officers authority to search. The Court further follows *Waller* in finding that, based on Defendant Etchison's transient state, he had a strong expectation of privacy in his bag.

After examining whether the defendant has an expectation of privacy, the court must determine if such expectation of privacy was reasonable.  *Waller*, at 7.  The defendant's expectation of privacy must be "one that society is prepared to recognize as reasonable." *Gillis*, 358 F.3d at 391. The *Waller* court held that the defendant's expectation of privacy was reasonable in the same manner that a bus traveler's expectation that his carry-on luggage would not be subject to invasive exploration by government officials.  *Waller*, at 7.  The *Waller* court stated:

> The same reasonableness justifies Waller's expectation of privacy in this case. Waller had recently moved his things from the Storey residence, but had not taken

up residence in Howard's apartment. Waller was transient, using Howard's apartment primarily for showering, changing clothes, and storing his personal belongings. He placed some of his personal items in a piece of luggage, zipped the luggage closed, and stored it in the bedroom closet of the apartment. Under these circumstances, Waller's expectation that his luggage would not be subject to physically invasive inspection was reasonable.

*Id.* (Internal quotations omitted).

The Court finds that Defendant Etchison's expectation of privacy in his bag was reasonable. Like the defendant in *Waller*, Defendant Etchison had not taken up residence in Mr. Overall's flat; he was transient; he used Mr. Overall's residence primarily to sleep and store his personal belongings; he stored some personal belongings in a closed bag that was either tied or zipped; and stored the closed bag in a location he thought was safe. Based on these circumstances, the Court finds that Defendant Etchison's expectation of privacy in his bag was reasonable.

### 2.      Authority of Third Party to Consent to Search

A party giving consent to search must have common authority over the place or items to be searched. *Matlock*, 415 U.S. at 171. The determination of common authority rests on "mutual use of the property by persons generally having joint access or control." *Gillis*, 358 F.3d at n.7. Where the government "seeks to justify the warrantless search by proof of voluntary consent, in the absence of proof that consent was given by the defendant, it may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." *Waller*, at 7. The consent of a third-party can be valid even where the target of the search is present and refuses to consent to the search. *United States v. Sumlin*, 567 F.2d 684, 687-688 (6th Cir. 1977). While a consenting party who gives general consent to search also consents to the search of all containers where contraband could be hidden, *Florida v. Jimeno*, 500 U.S. 248, 251 (1991); *United States v. Garrido-Santana*, 360 F.3d

11

565 (6th Cir. 2004), the scope of a third party's general consent to search the premises does not

extend to closed containers in which a guest has a distinct privacy interest.  *Gillis*, 358 F.3d at 391.

The Sixth Circuit Court of Appeals held: "Guests and co-residents in a house may have privacy

interests in specific property which cannot be waived by a third party's consent to a general search

of the premises."  *Id*.  "A valid consent to search the closed container must come from one who has

common authority over the effects sought to be inspected, one who has mutual use of the property,

and one who generally has joint access or control for most purposes."  *Matlock*, 415 U.S. at 171-172.

With visitors' travel bags entrusted to a third party host, the government must show both joint access

or control and mutual use in order to establish common authority.  *Waller*, at 8.  The burden is on

the prosecution to prove the effectiveness of a third party's consent. *Illinois v. Rodriguez*, 497 U.S.

177, 181 (1990).

In determining whether the third party had common authority to grant the search of the

defendant's bag, the Sixth Circuit held:

> In this case, it is obvious that Howard, who assented to the search of his apartment
> in general, did not have common authority specifically with regard to Waller's
> luggage.  The parties held a mutual understanding that the luggage contained
> Waller's private personal effects.  Waller never gave Howard permission to open the
> luggage bag and Howard never did so.  The luggage contained not only the firearms
> but also personal toiletries used by Waller, who showered in the apartment. On these
> facts, we conclude that Howard did not have *mutual use* of the luggage, nor did he
> have joint access and control *for most purposes*.  Thus, he did not have common
> authority to grant permission to search Waller's luggage

*Waller*, at 8. (Emphasis in original).  Based on the above facts, the *Waller* court held that the

consenting third party did not have actual common authority over the defendant's bag.

In the current case, the Court finds that Mr. Overall did not have actual common authority

over Defendant Etchison's bag.  Mr. Overall did not have mutual use of Defendant Etchison's bag,

nor did he have joint access and control of the bag for most purposes.  Defendant Etchison testified

that the bag was understood by Mr. Overall to contain Defendant Etchison's personal belongings;

Defendant Etchison did not give the residents of 1214 South Jackson permission to open the bag;

there is no evidence that residents of 1214 South Jackson opened the bag; and the bag contained

Defendant Etchison's clothing and personal belongings.  It is evident from the facts that Mr. Overall

did not have common authority to provide consent to search Defendant Etchison's bag.

In determining the validity of a third party consent to search, a court must also determine if

the consenting third party had apparent authority.  Even if a consenting party did not have actual

authority, a warrantless search based on the consent of a third-party is valid if police reasonably

believed that the consenting party had apparent authority over the area searched.  *Rodriguez*, 497

U.S. at 188-189.  The court in *United States v. Jenkins*, 92 F.3d 430, 436 (6th Cir. 1996), held

"[w]hen one person consents to a search of property owned by another, the consent is valid if the

facts available to the officer at the moment ... warrant a man of reasonable caution in the belief that

the consenting party had authority over the premises."  *Id*. (Internal quotations omitted).  To

determine whether a search would "warrant a man of reasonable caution" to believe that a third party

has authority to consent to the property depends on the surrounding circumstances.  *Waller*, at 5.

The *Waller* court held:

> The government cannot establish that its agents reasonably relied upon a third party's
> apparent authority if agents, faced with an ambiguous situation, nevertheless proceed
> without making further inquiry.  If the agents do not learn enough, if the
> circumstances make it unclear whether the property about to be searched is subject
> to mutual use by the person giving consent, then warrantless entry  is unlawful
> without further inquiry.  Where the circumstances presented would cause a person
> of reasonable caution to question whether the third party has mutual use of the
> property, warrantless entry without further inquiry is unlawful.

*Id*.  (Internal quotations and citations omitted).

13

The *Waller* court held that the circumstances were unclear whether the defendant's luggage bag was subject to mutual use by the consenting third party and as such the officer's search without further inquiry was unlawful. *Id*. at 7. The court held that based on the facts that: (1) the officers knew that the defendant had recently left one residence and did not permanently reside at the consenting third party's home; (2) the defendant informed the officers conducting the search that he had some personal items in the apartment; and (3) there were two other individuals aside from the defendant and the consenting third party present in the apartment during the search. The court further held: "Most people do not keep a packed, closed suitcase in their own apartment. Deliberate ignorance of conclusive ownership of the suitcase does not excuse the warrantless search of the suitcase, especially when actual ownership could easily have been confirmed." *Id*. at 9. Based on the above mentioned facts, the *Waller* court held that the circumstances were "sufficiently ambiguous to place a reasonable officer on notice of his obligation to make further inquiry prior to conducting a search of the luggage" and, as a result, the officer's warrantless search into the defendant's luggage bag was unlawful pursuant to the Fourth Amendment.

The Court finds that based on the current circumstances it was unclear whether Defendant Etchison's bag was subject to mutual use by Mr. Overall, and as a result the search was unlawful without further inquiry by the police officers. Officer Hitt testified that he did not know Defendant Etchison to reside at 1214 South Jackson, during the time he has known him. Both Officer Jordon and Defendant Etchison testified that Defendant Etchison stated that he had some personal items stored in the residence. There were two women, along with Mr. Overall and his son and Defendant Etchison present in the apartment when the officers conducted the search. Furthermore, attached to the bag was a large luggage tag, approximately the size of a large index card, with Defendant

14

Etchison's name typed on it.  The current case is analogous to *Waller* in regards to the apparent authority of the consenting third party.  The facts available to the police officers at the time of the search are ambiguous enough to require the officers to further inquire about Mr. Overall's authority to consent to the search of the bag.  Since the officers did not further inquire about Mr. Overall's authority, the search of Defendant Etchison's bag is unlawful.  The circumstances of the present case do not "warrant a man of reasonable caution" to believe that Mr. Overall had authority to consent to the search of Defendant Etchison's bag.

As Defendant Etchison had a reasonable subjective expectation of privacy in his bag, and Mr. Overall did not have actual or apparent authority to consent to the search of the bag, the officers failure to further inquire regarding the authority of Mr. Overall renders the consent to search Defendant Etchison's bag invalid.  As a result, the evidence found during the search of Defendant Etchison's bag is unlawful and must be suppressed pursuant to the Exclusionary Rule.

**C.     Suppression of the Statements**

As the Court finds that the gun was obtained unlawfully, for the reasons stated above, the Court must now determine whether Defendant Etchison's statements must be suppressed.

**1.     Fruit of the Poisonous Tree**

The Exclusionary Rule not only excludes evidence obtained as a direct result of an illegal search or seizure, but also excludes later discovered evidence that was derivative of an illegal search. *United States v. Segura*, 468 U.S. 796, 804 (1984), citing *Nardone v. United States*, 308 U.S. 338, 341(1939).  Such later discovered evidence is excluded under the Fruit of the Poisonous Tree doctrine.  *Id*. The Fruit of the Poisonous Fruit doctrine extends the Exclusionary Rule to include indirect products of unconstitutional searches or seizures.  *Id*.  Such excluded evidence may be both

15

tangible and testimonial. *Murray v. United States*, 487 U.S. 533, 536 (1988). Evidence resulting from information or leads obtained from illegally seized evidence is inadmissible in criminal prosecutions. *Alderman v. United States*, 394 U.S. 165, 171 (1969). "The question to be resolved when it is claimed that evidence subsequently obtained is "tainted" or is "fruit" of a prior illegality is whether the challenged evidence was come at by exploitation of the initial illegality or instead by means sufficiently distinguishable to be purged of the primary taint." *Segura*, 468 U.S. at 804-805 (Internal quotations and citations omitted). Evidence will not be excluded under the Fruit of the Poisonous Tree doctrine if the connection between the illegal police conduct and the discovered evidence is "so attenuated as to dissipate the taint." *Id.*, citing *Nardone*, 308 U.S. at 341. If police officers had an independent source for discovery of the evidence, the evidence will not be excluded. *Id*. Evidence will only be excluded as fruit of the poisonous tree if the unlawful search or seizure was at least the "but for" cause of the evidence's discovery. *Id*. at 796.

Here, Officer Hitt questioned Defendant Etchison only after the discovery of the gun and Mr. Overall's statement that the gun belonged to Defendant Etchison. Furthermore, Officer Hitt questioned Defendant Etchison about the ownership of the gun. There was no testimony that Defendant Etchison was questioned about the stolen purse (the initial reason officers went to 1214 South Jackson), despite the fact that Defendant Etchison was found in the closet with the purse. There is also no testimony or evidence suggesting that the officers had some other basis, aside from the search of the bag, to question Defendant Etchison regarding ownership of a gun.

Based on these facts, the Court finds that Defendant Etchison would not have been questioned, nor the statements given if Officer Jordon had not found the gun in Defendant Etchison's bag. The Court further finds that the search of Defendant Etchison's bag was the "but

16

for" cause of the questioning of Defendant Etchison.   As a result, the statements are fruits of the illegal search of Defendant Etchison's bag, and as such are suppressed.

### 2.      Custodial Interrogation

Although the Court finds that the statements are suppressed as fruits of the poisonous tree, the Court will also examine whether the statements are admissible pursuant to *Miranda*.

The Fifth Amendment protects individuals from self-incrimination.  U.S. Const. Amend. 5. Police interrogation of a suspect in custody threatens the Fifth Amendment where officers compel confessions through coercive interrogation or exposure to "inherently coercive" environments created by custodial interrogation.  *New York v. Quarles*, 467 U.S. 649, 654 (1984).  The Supreme Court in *Miranda v. Arizona*, 384 U.S. 436 (1966), extended the Fifth Amendment privilege to apply to individuals subject to custodial interrogation.  *Id*. at 460-461, 471.  *Miranda* requires officers to inform a suspect: (1) of his or her right to remain silent; (2) that any statements he or she does make may be used against him or her at trial; (3) that he or she has the right to have an attorney present during questioning; and (4) that if he or she cannot afford an attorney, one will be appointed for him or her.  *Id*. at 444.  *Miranda* warnings must be given before custodial interrogation of a suspect. *Illinois v. Perkins*, 496 U.S. 292, 297 (1990).

Custody, for purposes of *Miranda*, involves the deprivation of "freedom of action in any significant way.  *Miranda*, 384 U.S. at 444.  *Miranda* warnings are required when a "suspect's freedom of action is curtailed to a degree associated with formal arrest." *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984).  In determining whether a suspect is in custody, the court must objectively assess the circumstances as a reasonable person in the suspect's position would.  *Stansbury v. California*, 511 U.S. 318, 323 (1994) (per curiam), *Berkemer*, 468 U.S. at 442.  The court must

17

consider the totality of the circumstances in making this determination. *California v. Beheler*, 463 U.S. 1121, 1125 (1983) (per curiam).

"'[I]nterrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

The prosecution bears the burden of proving the admissibility of a confession. *Lego v. Twomey*, 404 U.S. 477, 489 (1972). The prosecution also has the burden of proving a valid waiver of *Miranda* rights and that an inculpatory statement was voluntarily given. *United States v. Short*, 790 F.2d 464, 468 (6th Cir. 1986). The Sixth Circuit Court of Appeals further stated: "since the State is responsible for establishing the isolated circumstances under which interrogation takes place and has the only means of making available corroborated evidence of warnings given during incommunicado interrogation, the burden is rightly on its shoulders." *Id*., citing *Miranda*, 384 U.S. at 444.

The Court finds that Defendant Etchison was in custody when he made the statements in question. After being found in the closet, Defendant Etchison was told to sit in the living with the two women present in the home. None of the persons present in the home were permitted to walk around during the search, except Mr. Overall. After officers found the gun, Officer Hitt told Defendant Etchison to follow him into the bedroom for questioning. At that time, Defendant Etchison testified that he believed Mr. Overall was outside of the residence. Officer Hitt took Defendant Etchison away from the two women, who were not suspects relative to the gun.

Once in the bedroom, Officer Hitt stood between Defendant Etchison and the door, blocking

18

the only exit from the bedroom.   Officer Hitt proceeded to question Defendant Etchison about the gun, stating at one point that officers can run tests on the gun that would indicate who had touched it, using skin cells.  Officer Hitt testified that he was implying that officers would use DNA tests to determine who had held the gun.  Officer Hitt also testified that he informed Defendant Etchison that he was not under arrest and would not be arrested that day.  The Court notes that while Officer Hitt may not be untruthful regarding this statement, he did not include this statement in his police report made that day nor did he remember telling Defendant Etchison that he was not under arrest until three months before the suppression hearing.  Officer Hitt also testified that Defendant Etchison was not given *Miranda* warnings at any time during questioning.

During questioning, Officer Hitt knew: (1) Defendant Etchison was found in the closet with the stolen purse and although Autumn Moorhead admitted she took the purse, Defendant Etchison could also be a suspect with respect to any crime involving the purse; (2) Defendant Etchison was questioning the officers' authority to search; and (3) Mr. Overall had stated that the gun belonged to Defendant Etchison.  Defendant Etchison testified that he was concerned that Mr. Overall was outside, that Officer Hitt was standing between himself and the door, and that he believed he was not free to leave.

Considering the totality of the circumstances, the Court finds that a reasonable person in Defendant Etchison's position would believe that his freedom of action was curtailed to a degree associated with a formal arrest.  A reasonable person would believe that Defendant Etchison was not free to leave.  As a result, the Court finds that Defendant Etchison was in custody for purposes of *Miranda*.

The Court also finds that Defendant Etchison was subject to interrogation under *Miranda*.

19

Officer Hitt testified that he questioned Defendant Etchison regarding the ownership of the gun.  He also testified that he told Defendant Etchison that officers could run a test of skin cells found on the gun to determine the identity of anyone who had touched the gun.  Officer Hitt testified that he was implying the use of DNA tests and that it was reasonable for Defendant Etchison to believe the tests he was referring to were DNA tests.  The statements and questions said to Defendant Etchison by Officer Hitt are such that the police should know are likely to elicit an incriminating response, and are interrogation under *Miranda*.

Since Defendant Etchison was subject to custodial interrogation and was not given *Miranda* warnings, the statements made by Defendant Etchison were obtained unlawfully and are suppressed.

## IV.    CONCLUSION

Accordingly,

IT IS ORDERED that Defendant's Motion to Suppress Statement **[Docket No. 17, filed May 18, 2005]** is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion to Suppress Evidence **[Docket No. 22, filed July 6, 2005]** is GRANTED.

20

/s/ Denise Page Hood

DENISE PAGE HOOD
United States District Judge

DATED: November 17, 2005


I hereby certify that a copy of the foregoing document was served upon counsel of record on November 17, 2005, by electronic and/or ordinary mail.

s/William F. Lewis

Case Manager

21